IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| INCIPIO, LLC, | |
| Plaintiff, | No. 20-cv-04800 |
| v. | Judge John F. Kness |
| UNDER ARMOUR, INC., | |
| Defendant. | |

**MEMORANDUM OPINION AND ORDER**

This case presents the latest chapter in a multifaceted contract dispute arising out of a failed merchandise licensing agreement. Plaintiff Incipio, LLC and Defendant Under Armour, Inc. entered into a licensing agreement under which Incipio was to sell mobile phone cases bearing Under Armour's name and marks. Incipio maintains that, when the licensing agreement fell apart, the parties agreed to a resolution of the dispute. When that second agreement again fell apart, Incipio says, Under Armour then made a new promise to abide by the earlier agreement. But Incipio alleges that Under Armour breached that promise as well by pulling the rug out from under Incipio and unjustifiably walking away from the deal at the last minute. In this declaratory judgment action, Incipio seeks a declaration in its favor concerning these disputes, as well as a reformation of the initial settlement agreement, damages under a promissory estoppel theory, and injunctive relief against Under Armour.

Under Armour now moves under Rule 12(b)(2) of the Federal Rules of Civil Procedure to dismiss the complaint based on a lack of personal jurisdiction. As

explained below, because the Court agrees that jurisdiction over Under Armour cannot be maintained consistent with principles of due process, Incipio's complaint must be dismissed without prejudice for lack of specific personal jurisdiction over Under Armour.

I.  BACKGROUND

Plaintiff Incipio, LLC is a Delaware limited liability company with its principal place of business in California. (Complaint ("Compl."), Dkt. 1 ¶ 4.) Defendant Under Armour, Inc. is a Maryland corporation with its principal place of business in Maryland. (*Id.* ¶ 5.) This action, brought under the Court's diversity jurisdiction, concerns a disputed settlement agreement into which the parties entered after an earlier licensing deal between the two entities soured.

In May 2017, the parties entered into a License and Distribution Agreement that permitted Incipio to sell mobile phone cases bearing Under Armour's proprietary trademarks and brand names. (*Id.* ¶ 10.) Incipio proved unable, however, to sustain the recurring royalty payments; this led the parties in June 2019 to sign a Termination Agreement ending the License and Distribution Agreement. (*Id.* ¶ 11.) As part of the Termination Agreement, Incipio consented to a confessed judgement of $30,900,000. (*Id.* ¶ 12.)

Unfortunately, the dispute did not end there. Incipio, presumably due to business difficulties, failed to perform its obligations under the Termination Agreement. (*Id.* ¶ 15.) Apparently concluding that half a loaf is better than none, Under Armour agreed in March 2020 to sign a "Payment and Forbearance

2

Agreement" with Incipio. (*Id.* ¶ 16.) That still did not end the matter, as it appears that Incipio then defaulted on its obligations under the Forbearance Agreement. (Dkt. 14, Def.'s Mem. at 3; Compl. ¶¶ 17, 18, 21.) This eventually led the parties to negotiate a final settlement of all related agreements, including the confessed judgement. (Compl. ¶ 21.)

Incipio designated Neil Goulden, a restructuring advisor providing services from his home office in Oak Park, Illinois, to negotiate the settlement with Under Armour's attorney, Robert Rich. (Dkt. 16-1, Goulden Aff. ¶¶ 1, 2, 10.) Goulden and Rich conducted their negotiations by email and telephone. (*Id.* ¶ 12.)

The resulting Settlement Agreement included two conditions precedent: (1) Incipio, by wire transfer, was to pay Under Armour $210,000 on June 30, 2020; and (2) within 5 business days of that date, Incipio was to assign Under Armour a $2.5 million portion of the principal of a separate promissory note by issuing an amended and restated promissory note in Under Armour's favor. (Compl. ¶ 20.) On June 30, 2020, the Settlement Agreement was electronically signed by Joe Sklencar (Incipio's Chief Financial Officer) and Ady Maheswari (Under Armour's Chief Accounting Officer). (*Id.* ¶ 19; Dkt. 5-2, Sklencar Aff. ¶ 2; Dkt. 16-1, Goulden Aff. ¶ 7.)

Incipio alleges that Rich confirmed to Goulden on June 30, 2020 that Under Armour would accept performance of the first condition precedent as timely if Incipio initiated the wire transfer on June 30, even though Under Armour would receive the payment on a later date. (Compl. ¶ 25.) Relying on Goulden's representation, Incipio

3

initiated the wire transfer on June 30. (*Id*. ¶ 26.) Because the Federal Reserve banking system did not complete the payment on June 30, Under Armour received the payment on July 1. (*Id*. ¶ 30.)

According to Incipio, on July 14, 2020, although Incipio stood "ready willing and able" to perform the second condition precedent by signing over the promissory note, Under Armour asserted that Incipio failed to satisfy the first condition precedent of the Settlement Agreement because Under Armour did not receive payment until July 1. (*Id*. ¶¶ 36-37.) Under Armour thus claimed that it was entitled to walk away from the Settlement Agreement. (*Id*. ¶ 37.) Accordingly, Under Armour refused to accept Incipio's performance of the second condition precedent and returned the funds sent on June 30. (*Id*. ¶¶ 36-43.) This litigation followed.

## II. LEGAL STANDARD

A plaintiff need not include facts alleging personal jurisdiction in her complaint; once personal jurisdiction is challenged, however, the plaintiff bears the burden of making a prima facie case for personal jurisdiction. *Curry v. Revolution Lab'ys, LLC*, 949 F.3d 385, 392 (7th Cir. 2020) (citing *Purdue Rsch. Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003)). In determining whether a plaintiff has established personal jurisdiction over a defendant, the Court can consider affidavits submitted by the parties. *Id*. at 393; *see also Purdue Rsch.*, 338 F.3d at 782-83 ("once the defendant has submitted affidavits or other evidence in opposition to the exercise of jurisdiction, the plaintiff must go beyond the pleadings and submit evidence supporting the exercise of jurisdiction"). A plaintiff facing a

4

challenge to personal jurisdiction is entitled to the resolution of disputes in her favor regarding relevant facts presented in the record. *Curry*, 949 F.3d at 393 (citing *Purdue Rsch.*, 338 F.3d at 782).

### III. DISCUSSION

#### A. The Law of Illinois Governing Personal Jurisdiction

A district court sitting in diversity[1] has personal jurisdiction over a nonresident defendant only if a state court in which it sits would have jurisdiction. *Purdue Rsch.*, 338 F.3d at 779 (citing *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002)). In Illinois, a "long-arm" statute provides that courts may exercise jurisdiction on any basis "now or hereafter permitted by the Illinois Constitution and the Constitution of the United States." 735 ILCS 5/2-209(c). Because § 2-209(c) renders Illinois jurisdictional limits coterminous with the United States Constitution's due process limits on personal jurisdiction, the Court must determine whether the exercise of personal jurisdiction over Under Armour complies with federal due process principles.[2] *See Curry*, 949 F.3d at 393 ("The Illinois long-arm

---

[1] Diversity jurisdiction exists because the parties are residents of the different states and more than $75,000 is in controversy. 28 U.S.C. § 1332. This Court must apply Illinois law because federal courts sitting in diversity apply the substantive law of the state in which they sit, as determined by their forum state's choice-of-law rules. *Fednav Int'l Ltd. v. Cont'l Ins. Co.*, 624 F.3d 834, 838 (7th Cir. 2010).

[2] The parties debate which Illinois jurisdictional provision to apply. Incipio focuses on 735 ILCS 5/2-209(a)(7), which provides Illinois courts with jurisdiction over disputes arising from "the making or performance of any contract or promise substantially connected with" Illinois. Subsection 2-209(c) is, however, broader than and encompassing of § 2-209(a)(7). *See Viktron, L.P. v. Program Data, Inc.*, 759 N.E.2d 186, 195-96 (Ill. App. Ct. 2001) (finding § 2-209(c) as an alternate basis for jurisdiction of a contract action after analysis of § 2-209(a)(7) supported jurisdiction). Accordingly, the Court focuses its analysis on § 2-209(c).

statute permits the exercise of jurisdiction to the full extent permitted by the Fourteenth Amendment's Due Process Clause") (quoting *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010)); *Sungard Data Sys., Inc. v. Cent. Parking Corp.*, 214 F. Supp. 2d 879, 882 (N.D. Ill. 2002) ("Illinois courts have given little guidance on how Illinois due process varies from federal concerns") (citing *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1276 (7th Cir. 1997)); *Russell v. SNFA*, 987 N.E.2d 778, 785 (Ill. 2013) ("there have been no decisions from this court . . . identifying any substantive difference between Illinois due process and federal due process on the issue of a court's exercising personal jurisdiction over a nonresident defendant").

Under established principles of due process, for a court to possess personal jurisdiction, the defendant must have "minimum contacts" with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " *Curry*, 949 F.3d at 395 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).[3] A defendant is said to have established "minimum contacts" when the defendant has "purposefully avail[ed]" itself of the laws of the forum state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-75 (1985); *Purdue Rsch.*, 338 F.3d at 780 ("In undertaking this analysis, the most helpful case is *Burger King Corp. v. Rudzewicz* . . . because, in the context of the adjudication of contractual

---

[3] Incipio concedes that this Court does not have general jurisdiction over Under Armour. (Dkt. 16, Pl.'s Resp. at 12.) As a result, the Court considers only whether it has specific jurisdiction over Under Armour. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) ("In contrast to general, all-purpose jurisdiction, specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction") (cleaned up).

6

rights, it deals with the requisite minimum contacts necessary to hold a nonresident defendant amenable to the jurisdiction of a state court").

Foresight can reasonably be considered the companion of purposeful action; foreseeability is thus "critical" to due process analysis. This is so because the defendant's conduct with the forum state must be such that the defendant could "reasonably anticipate being haled into court there." *Burger King*, 471 U.S. at 474 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)) (cleaned up). As a result, the "unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State." *Id.* (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)); *see also Walden v. Fiore*, 571 U.S. 277, 284 (2014) ("We have consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State"). In addition, contacts with the forum state that are "random, fortuitous, or attenuated" will not support a finding of jurisdiction. *Burger King*, 471 U.S. at 475 (cleaned up).

When determining whether a party to a contract should reasonably anticipate being haled into a particular forum on a breach of contract action, courts look to four factors: "'who initiated the transaction, where the negotiations were conducted, where the parties executed the contract, and where the defendant would have performed the contract.'" *Corus Int'l Trading Ltd. v. Eregli Demir ve Celik Fabrikalari, T.A.S.*, 765 F. Supp. 2d 1079, 1085 (N.D. Ill. 2011) (quoting *Corus Am., Inc. v. Int'l Safety Access Corp.*, No. 09-cv-01422, 2009 WL 5183834, at *3 (N.D. Ill.

7

2009) ("The existence of a contract between an out-of-state defendant and an Illinois plaintiff is insufficient, by itself, to justify personal jurisdiction")) (cleaned up). A relevant choice of law provision should also be considered. *See Sungard Data Sys., Inc.*, 214 F. Supp. 2d at 882 (citing *Burger King*, 471 U.S. at 482); *Bolger v. Nautica Int'l, Inc.*, 861 N.E.2d 666, 671 (Ill. App. Ct. 2007) ("a choice of law provision, although not by itself a sufficient basis to determine jurisdiction, is relevant") (cleaned up).

**B.     Under Armour Did Not Purposefully Avail Itself of Illinois Law**

In deciding whether specific personal jurisdiction exists over this contract action, the Court is bound, of course, to consider (1) who initiated the transaction; (2) where negotiations occurred; (3) where the contract was executed; and (4) where Under Armour was to perform under the contract. *Corus Int'l Trading*, 765 F. Supp. 2d at 1085. Considering at the outset the first and third factors, as well as whether there is a relevant choice of law provision, Incipio does not address who initiated either the Settlement Agreement or the previous License and Distribution Agreement. Nor does Incipio establish where the Settlement Agreement was executed. Neither Incipio nor Under Armour resides or has its principal place of business in Illinois; Under Armour therefore cannot be viewed as "affiliating" itself "with an enterprise based primarily in" Illinois. *See Burger King*, 471 U.S. at 480. These facts, taken together and when viewed in the light of the governing Illinois test, do not support a finding of specific personal jurisdiction. And as a side note—but an important one—the Settlement Agreement contains a choice of law provision opting for New York law; that fact also cuts against jurisdiction in Illinois.

As to the second factor of the Illinois test—where negotiations took place—Incipio highlights that Robert Rich (Under Armour's counsel) negotiated the Settlement Agreement with Neil Goulden (Incipio's restructuring representative) while Goulden was present in Oak Park, Illinois (a village within this District). (Dkt. 16, Pl.'s Resp. at 12-13.) Incipio contents that this fact supports specific jurisdiction. (*Id.*) Incipio also finds it significant that Rich promised to Goulden that Under Armour would accept Incipio's late payment. (*Id.*)

Incipio's reliance on Goulden's presence in Illinois is misplaced. As Incipio would have it, Goulden's presence in Illinois means Under Armour negotiated the contract in Illinois. (Dkt. 16, Pl.'s Resp. at 12-13.) In support, Incipio cites an Illinois decision in which the Appellate Court of Illinois found personal jurisdiction based on contract negotiations that occurred in Illinois. *See Viktron, L.P. v. Program Data, Inc.*, 759 N.E.2d 186, 194 (Ill. App. Ct. 2001). But *Viktron* does not control here, for the simple but distinguishing fact that Under Armour, unlike the defendant in *Viktron*, did not physically enter Illinois to negotiate the Settlement Agreement.

In the alternative, Incipio cites *Katala v. Healy*, 728 N.E.2d 648 (Ill. App. Ct. 2000), and *Morgan, Lewis and Bockius, LLP v. City of East Chicago*, 934 N.E.2d 23 (Ill. App. Ct. 2010) for the proposition that, even if the defendant does not physically enter Illinois, it can have minimum contacts with Illinois if it negotiates a contract with an Illinois resident entity. (Dkt. 16, Pl.'s Resp. at 13-14.) In both of those cases, however, the contracting plaintiff itself was an Illinois resident or entity. *See Katala*, 728 N.E.2d at 655 (defendant negotiated and entered joint venture agreement with

9

Illinois resident); *Morgan*, 934 N.E.2d at 32 (defendant negotiated and contracted with an Illinois law firm). Under Armour did not contract with an Illinois resident: instead, it dealt with a Delaware corporation that had its principal place of business in California. That essential factual distinction renders *Katala* and *Morgan* of dubious effect.

It does not matter that Incipio chose an Illinois resident (Goulden) as its agent for the purpose of negotiating the deal, as that factual nugget was insufficient to put Under Armour on notice that it could be haled into court in Illinois. *Burger King*, 471 U.S. at 474-75 ("Jurisdiction is proper . . . where the contacts proximately result from actions by the defendant *himself*" not from "unilateral activity of another party or a third person") (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984)). Put another way, Under Armour did not "purposefully avail" itself of Illinois law because it negotiated with a non-Illinois plaintiff whose chosen negotiator's home office happened to be in Illinois.

Incipio also contends that specific personal jurisdiction exists because the Settlement Agreement was to be performed in Illinois. In support of this argument, Incipio first emphasizes that the promissory note it agreed to sign over to Under Armour was held by Chicago-based Monroe Capital LLC. (Dkt. 16, Pl.'s Resp. at 14.; Dkt. 16-1, Goulden Aff. ¶¶ 13-14.) Incipio further emphasizes that Monroe Capital's Chicago-based attorneys at Mayer Brown LLP drafted the provision of the Settlement Agreement that required Incipio to sign the promissory note over to Under Armour.

10

(*Id.*).[4] These facts, Incipio says, show that significant performance of the Settlement Agreement was to (and did) occur in Illinois. (*Id.* at 12.)

Monroe Capital is not a party to this suit; nor is it a party to the Settlement Agreement. That document did not even mention Monroe Capital, nor did the Settlement Agreement condition Incipio's signing-over of the note on some action by Monroe Capital. (Dkt. 1-1, Settlement Agreement, at 2.) Incipio is wrong, therefore, to suggest that Monroe Capital's role left the Settlement Agreement so "substantially connected to Illinois" that Under Armour could "reasonably anticipate being haled into court" in Illinois. (Dkt. 16, Pl.'s Resp. at 14.); *Burger King*, 471 U.S. at 474 (cleaned up).

Even if Monroe Capital were crucial to Incipio's performance, as Incipio says, it is Under Armour's performance of the contract, not Incipio's (or any other entity's), that matters for personal jurisdiction. *See Purdue Rsch.*, 338 F.3d at 780 ("Notably, it must be the activity of the defendant that makes it amenable to jurisdiction, not the unilateral activity of the plaintiff or some other entity"); *Cherry Commc'ns, Inc. v. Coastal Tel. Co.*, 906 F. Supp. 452, 455 (N.D. Ill. 1995) ("it is well established that the place of plaintiff's performance has no influence on jurisdiction"); *Corus Int'l*, 765 F. Supp. 2d at 1086 (" . . . although [p]laintiff points out a large number of activities

---

[4] Incipio did not mention either Monroe Capital or Mayer Brown in its complaint. Moreover, it is unclear whether Monroe Capital's engagement of Mayer Brown and the details surrounding the drafting of the Assignment Condition provided by Goulden in his affidavit constitute competent evidence. (Dkt. 16-1, Goulden Aff. ¶¶ 14-16.) *See* Fed. R. Evid. 802. *See also Harlem Ambassadors Prods., Inc. v. ULTD Ent. LLC*, 281 F. Supp. 3d 689, 695 (N.D. Ill. 2017) (unidentified customer informing the plaintiff that the defendant contacted them was inadmissible hearsay). For present purposes, however, the Court assumes that this evidence is properly considered.

it undertook in Illinois in furtherance of the Settlement Agreement, it fails to indicate any Illinois-based action on [the] [d]efendant's part"). It is not relevant that Monroe Capital "has a significant interest in [Incipio's] financial well-being" due to its senior lien on Incipio's assets; nor is it relevant that Monroe Capital held the promissory note Incipio said it would sign over to Under Armour. (Dkt. 16, Pl.'s Resp. at 14.; Dkt. 16-1, Goulden Aff. ¶¶ 3-4, 13.) Incipio thus fails to allege a critical missing requirement: that *Under Armour* was to perform its part of the Settlement Agreement in Illinois.

Finally, Incipio's reliance on the location of Monroe Capital's counsel (Mayer Brown) is a nonstarter. As another judge in this District has explained, that a plaintiff's attorney was present in Illinois "is entirely irrelevant to where the alleged . . . injury was suffered." *See Price v. Schlee & Stillman, LLC*, No. 16-cv-8020, 2017 WL 2838265, at *3 (N.D. Ill. 2017). Mayer Brown's presence in Illinois does not compel a finding of personal jurisdiction.

When Incipio's allegations are considered in the light of the governing Illinois test for personal jurisdiction, the Court must hold that there is insufficient evidence to support a finding that Under Armour can be bound to this action consistent with applicable principles of due process. Accordingly, the motion to dismiss for lack of personal jurisdiction must be granted.

## IV. CONCLUSION

For the foregoing reasons, the Court finds that Plaintiff Incipio has failed to allege sufficient minimum contacts to support the exercise of specific jurisdiction over

Defendant Under Armour. Accordingly, Under Armour's motion to dismiss for lack of jurisdiction is granted without prejudice. Incipio is given leave to file an amended complaint, on or before September 7, 2021, if Incipio believes, consistent with Rule 11 of the Federal Rules of Civil Procedure, that an amended pleading can cure the jurisdictional issues identified in this opinion.

SO ORDERED in No. 20-cv-04800.

Date: August 16, 2021

JOHN F. KNESS
United States District Judge